*395 Opinion of the Court, by
Judge Mills.
THIS is a writ of error brought to a decree in chancery, which perpetuated, to some extent, an injunction on a judgment at law. The bill was taken pro confesso, without service of process; but an order of publication was had, and on the proof of publication, the decree was rendered.
Accord without satisfaction, and refusal to accept the satisfaction agreed, equity will not decree a specific execution.
The true criterion of the measure of damages in covenants of warranty, &c is the value of the land; and the price given is evidence of such value.
It is no ground for relief in equity, that the defendant did not know, at the time of the trial at law, what the legal criterion of damages was.
A bill of injunction seeking to set-off a mutual debt due by simple contract, ought to state the consideration of the debt; and if it does not, it will be sufficient cause for reversing a decree on a bill taken pro confesso; and it will be presumed to be by simple contract, unless stated otherwise in the bill.
*396 The errors assigned are reducible to the two following propositions: 1st, There is no equity in the bill, to authorise the decree; and 2dly, if there is any equity, the proceedings preparatory to taking the bill pro confesso were erroneous.
The judgment at law was obtained on a penal bond with a collateral condition, binding the complainants in chancery to convey, within eight months from the date of the bond, twelve hundred acres of land; and the breach assigned at law, was the failure to convey. The bill alleges that the complainants had used considerable diligence in procuring the patents to the land in due time to make the conveyance; but, by accident, one of the plats and certificates was lost; and that, at the time of filing the bill, patents were obtained to nearly the whole amount, which they are now ready and willing to convey.
Whether, after a breach at law, the chancellor will, in any case, except where the breach has arisen through the acts of the plaintiff at law, compel the specific execution of a contract, in favor of the party in default, is a matter somewhat unsettled, and the authorities on the point are somewhat contradictory. However the doctrine may be, as a general rule, we are satisfied that the complainants have not, in this instance, entitled themselves, on that ground, to the interposition of the chancellor; for they are not yet ready to complete the whole contract, by conveying all the land, and the defendant in chancery could not be bound to take part of his contract specifically, and compensation for the residue. If he could not get the whole, the election lay with him, to disaffirm the whole, or to take what he could get, and damages for the deficiency.
The bill further alleges that the plaintiff at law had once agreed, since the rendition of the judgment, to take part of the lands, or the whole, in discharge of the judgment; but afterwards failed to attend, at a time and place appointed for that purpose, and to receive the land. This ground of equity only exhibits an accord, without a satisfaction, which the plaintiff at law might or might not accept; and as he failed to accept, it is not such an agreement as the chancellor ought to compel him to fulfil, and no relief could be granted on this ground.
*397 Another ground of equity relied on, is, that although there were three obligors in the bond, who were defendants at law, yet two of them were only securities for the third, and relied on the principal to make the proper defence at law, and that he had engaged to make the defence; but at the trial the principal was confined to his bed by sickness, and could not attend; that the verdict and judgment at law were rendered for too large a sum, and for far more than the purchase money and interest; that the land was rated, in the sale to the vendee, at only seventy-five cents per acre, and was, at the time of filing the bill, worth no more; that the land had at first been sold to one M’Connell, for one dollar per acre in property, which did not amount to more than seventy-five cents in money; that M’Connell had sold the same land to the plaintiff at law, now defendant in chancery, at the rate of only seventy-five cents, and that the bond on which the judgment at law was founded, was then executed to the present plaintiff at law, instead of M’Connell; that M’Connell had failed to pay to the present complainants at law the full price of the land, but still owed apart, and had left the commonwealth, and was believed to be insolvent; that the complainants in chancery did not, at the trial at law, and even yet, know of any witness by whom they could prove the consideration for the land, stipulated to be paid by M’Connell to them, or the price paid by the defendant in chancery to M’Connell; that these matters rested exclusively in the knowledge of the contracting parties, and of this matter they pray a disclosure from the defendant. They allege the judgment at law was far higher than either the consideration which passed from M’Connell to them, or from the defendant in chancery to M’Connell, and that they did not know, at the trial at law, that the consideration paid, with interest, was the proper criterion of damages, and could not have proved it, if they had known it. On this ground they pray a new trial at law, or that the chancellor may reduce the damages to the proper standard; and it is on this ground, as far as we can ascertain, that the court below has granted relief.
Although these charges and allegations may, at first view, afford a specious equity, yet, when analysed, we apprehend, they are not tenable. As to the charge that M’Connell has failed to pay the complainants the *398 consideration, or part of it, which he had engaged to pay, finished no ground for relief against the defendant in chancery, now plaintiff in error. There is no charge that he had failed to pay the consideration to M’Connell for his purchase, and it is the consideration moving from him, that entitles him to a remuneration in damages for a breach of the contract. Instead of taking the obligation of M’Connell, he has obtained the complainants’ obligation, which they have substituted for that of M’Connell, and they must be supposed to bind themselves to convey the land to the defendant in chancery, at all events, and to rely on the responsibility of M’Connell alone, to make good to them the consideration. If M’Connell failed, the defendant in chancery was not bound to make good M’Connell’s failure, or to subject himself to a deduction of his demand, on that account. The consideration moving from the defendant in chancery, being different from, and unconnected with that moving from M’Connell to the complainants, the failure of M’Connell cannot, according to the principles settled by this court in the case of Clay vs. Morrison, &c. Hard. 421, furnish any ground of relief against the plaintiff in error.
Nor can the charge that the consideration of both contracts was a secret to all except the contracting parties, and the disclosure required by the bill, furnish a proper ground of relief. It is true, it has been settled by repeated decisions of this court, that the purchase noney and interest, where no fraud is apparent on the part of the vender, is a proper criterion of damages, in case of breaches of conveyances with warranty, or bonds engaging such conveyances. But the true doctrine is, that the value of the land at the time of the contract, is the proper criterion, and that the price stipulated by the parties is the best evidence of that value. But it never has been held, that if this stipulated price could not be proved, the parties could not prove the value of the land at the date of the contract, by evidence aliunde. No doubt, such evidence is admissible; and the complainants show by their own bill, that if they had resorted to such evidence on the trial at law, they would have been more successful, than if the price could have been proved by proper testimony; for they allege, that although they, or one of them, had sold the land at the price of one dollar per acre, paya *399 ble in property, yet, notwithstanding the general rise of lands in the country, the land here sold was not worth more, at the time of filing their bill, than seventy-five cents per acre; and there is no suggestion in the bill, that witnesses could not have been procured, on the trial at law, who could have testified the value of the land, at the date of the contract, to have been as low as the price given by the plaintiff in error, and even lower than that agreed upon between M’Connell and the defendants in error. As the quantum of damages was a matter properly triable at law, and the decision at law is conclusive on this subject against the interference of the chancellor, when the parties might and ought to have made their defence at law, by testimony which is not shown to be out of their reach, it follows, that the plaintiffs in error ought to be bound by the verdict, and not be permitted to impeach it in equity, unless they have shown some available excuse for not procuring and using the proper evidence on that trial.
This leads the court to an inquiry into their excuses. The first is, that one of the defendants in error was the principal, and the other two securities in the bond, and the principal had engaged, and the others relied on him, to make the proper defence, and he was confined to his bed by sickness, at the time of the trial. Confinement by sickness being a calamity to which all are subject, and none can avoid, may, and ought to furnish, frequently, a proper excuse for failing to attend to such business as a trial at law; but the excuse ought to be attended with circumstances which show that that confinement precluded the whole party from paying attention to the suit. It is not necessary for us here to enquire whether a person confined ought to procure an agent to attend in his stead, or show that he could not obtain one, before he could obtain relief in equity; for, in this case, all three of the defendants in error stood, to all ordinary purposes, in the same relation to the plaintiff, and each, as to him, was his debtor, and if one of them failed, it gave the others no right to relief, but the others ought to be bound by that failure. If a different rule should prevail, there would be few cases of judgments at law, against more defendants than one, where the chancellor might not be called upon to over-hale their merits, because all rested on one, and he failed. It is not necessary for us to say that a possible *400 case could not be made out, where the failure of one to defend, might not furnish a ground of equity. There may be such exceptions, but this case is not one. It is not shown that the other defendants at law, who were not sick, had not the means of knowing, and did not know of the confinement of their co-defendant; and yet they trusted the trial to its fate, without paying any attention. Besides, it is not shown that the one who was confined by sickness, or that either of them, ever attempted to procure or introduce the proper testimony. Indeed, it is clearly inferable from the bill, that neither of them intended to make the proper defence; for they allege that they did not know that the value of the land, at the date of the contract, or rather the price agreed to be given, furnished the proper measure of damages, and that they had since been advised of this matter. So that the sickness of one of the obligors, according to their own showing, could make no difference; for, being ignorant of the proper amount to be recovered, they did not intend to make the proper defence, and no intimation is given, that witnesses were or ever had been summoned, to show the true value of the land at the date of the contract.
The question then resolves itself into this: Ought this ignorance of the proper measure of damages sufficiently to excuse the failure to make the proper defence at law, and entitle the party thus failing to avail themselves of the same matter in equity? This judgment was rendered previous to any decision of this court fixing the quantum of damages recoverable in such cases, and it must be admitted, that a different standard was often fixed by the inferior courts; but, at the same time, there was a well known difference of opinion among legal characters on the subject, and all knew that the proper criterion had not been settled by this court. This uncertainty, if it could be admitted that a party litigant could avail himself of his ignorance of the true measure, was certainly enough to put him to a proper trial of the question, and receiving upon it the decision of the court of the last resort; and his having failed to do so in a matter purely legal, ought to deprive him of the trial of the same matter in a court of equity. But we are not disposed to admit that the ignorance of the party, of the proper measure of damages, ought to excuse his failure at law to make the proper defence. *401 The measure of damages, in this case, was, and is, a matter of law, and every man must be presumed to know it. This is a principle which runs through all our code; and although it may not be true in fact, that a party litigant did know the law, yet it must be presumed that he did so know it. However hard this general rule may operate in particular cases, yet no other principle will answer as a general rule; for if no man could be made responsible for a breach of law, until his adversary should prove that he knew the law, there would be but few recoveries had, for the most flagrant violations. This ground of equity, then, that the damages were improperly assessed, cannot avail the defendants in error, under the allegations of their bill in the present case.
There remains but one more ground of equity to be considered. It is alleged that the plaintiff in error owed one of the defendants the sum of eighty dollars, with interest, which he had agreed to discount against so much of the judgment at law, after it was rendered. It is not stated that this sum is due by note, or any writing, and it must be presumed to be due on such a contract as would furnish grounds for an action of assumpsit at common law. To sustain such action, without writing, it would be necessary, even at law, to aver and set out the consideration, and less cannot be required in a court of equity. The contract for the eighty dollars consisting in word only, ought to be shown to be valid, to the chancellor, by stating the consideration, into which the chancellor will pry, with equal, if not severer scrutiny, than a court of law. This allegation is, therefore, deemed too deficient to entitle the party to any redress. This decision on the equity of the bill, renders it unnecessary to travel into the regularity of the proceedings.
The decree must be reversed with costs, with directions to the court below to dissolve the injunction with damages, and dismiss the bill.